1

2

3                   UNITED STATES DISTRICT COURT

4                  NORTHERN DISTRICT OF CALIFORNIA

5

6    ISAAC CASTRO,                          Case No.  16-cv-00501-MEJ

7              Plaintiff,
                                            **ORDER GRANTING MOTION TO
8         v.                                DISMISS**

9    UNITED STATES OF AMERICA,              Re: Dkt. No. 16

10             Defendant.

11

12                            **INTRODUCTION**

13        Plaintiff Isaac Castro ("Plaintiff"), as Personal Representative of the Estate of Sara

14  Castromata, his daughter, brings suit against the United States of America ("Defendant") under the

15  Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.  Pending before the Court

16  is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1)

17  for lack of subject matter jurisdiction in light of *Feres v. United States*, 340 U.S. 135 (1950), and

18  its progeny.  Dkt. No. 16.  Plaintiff filed an Opposition (Dkt. No. 18), and Defendant filed a Reply

19  (Dkt. No. 20).  The Court finds this matter suitable for disposition without oral argument and

20  **VACATES** the July 14, 2016 hearing.  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b).  Having

21  considered the parties' positions, relevant legal authority, and the record in this case, the Court

22  **GRANTS** Defendant's Motion for the following reasons.

23                             **BACKGROUND**

24        The following facts are taken from Plaintiff's Complaint.  *See* Compl., Dkt. No. 1 (filed

25  Jan. 28, 2016).  Sara Castromata was on active duty for the United States Marine Corps

26  ("USMC") stationed at Marine Corps Base, Quantico, Virginia ("MCBQ") at the time of her

27  death.  *Id.* ¶ 3.  On March 21, 2013, Sgt. Eusebio Lopez fatally shot Castromata while she was in

28  her barracks room aboard MCBQ.  *Id.* ¶¶ 4, 12, 38.

United States District Court
Northern District of California

Plaintiff alleges Lopez had documented head trauma and PTSD, following his three tours in support of Operation Iraqi Freedom. *Id.* ¶ 13. Lopez was initially supposed to transfer to MCBQ to attend Recruiter school, but he was reassigned to serve at the Officer Candidates School ("OCS") aboard MCBQ after failing a mental health screening. *Id.* ¶ 15. When Lopez was transferred to MCBQ in March[1] 2012, MCBQ did not obtain or review his medical records, and subsequently Lopez stopped treating his mental health issues. *Id.* ¶ 14.

Lopez and Castromata had a brief, intimate relationship that began in November 2012 and ended several weeks prior to March 21, 2013. *Id.* ¶ 28. Castromata began dating Cpl. Jacob Wooley following her relationship with Lopez. *Id.* ¶ 34.

On March 21, 2013, Lopez sent Castromata a text message indicating he was going to commit suicide. *Id.* ¶ 29. Castromata warned the Sentry about Lopez's text and mental state, but the Sentry did not notify the chain of command or document the incident. *Id.* ¶ 30. The same day, Lopez told the Sentry he was locked out of his room and asked for the master key, which the Sentry gave him. *See id.* ¶ 33. Lopez later returned his own room key to the Sentry, instead of the master key. *Id.*

While Castromata and Wooley were on liberty and off-base on a dinner date, Lopez used the master key to access Castromata's room, Wooley's room, and the stairwells. *Id.* ¶ 35. Castromata and Wooley returned to the barracks between 8:30 and 9:00 p.m. and watched a movie in Wooley's room before returning to Castromata's room. *Id.* ¶ 36. Around 10:00 p.m., Lopez, under the influence of alcohol and in possession of a firearm, confronted Castromata and Wooley, and fatally shot Wooley, Castromata, and himself. *Id.* ¶ 38. Plaintiff alleges their bodies were left in place for over six hours before any action was taken to determine if the injuries were survivable. *Id.* ¶ 39. Specifically, Plaintiff alleges "no action was taken to determine the medical condition of all personnel involved until approximately four hours after the shooting; local civilian authorities were not contacted during this time to assist." *Id.*

Plaintiff brings a single claim in this lawsuit: negligence. *Id.* ¶¶ 41-44. In addition to the

---

[1] The Complaint states that Lopez was transferred in *May* 2012, but this appears to be a typographical error. Compl. ¶ 3.

United States District Court
Northern District of California

events above, Plaintiff alleges that upon arrival at MCBQ, Lopez never attended a Welcome Aboard Brief, which reviews the Command's policies and procedures for personal firearms.  *Id.* ¶ 16.  Furthermore, Lopez owned a Springfield XD .45 caliber, semi-automatic pistol and Remington shotgun in addition to several large knives and ammunition, which he originally stored off-base at his personal residence.  *Id.* ¶¶ 17, 18.  Plaintiff alleges the Command knew about Lopez's firearms by the time he moved into the barracks at OCS, but they did not ensure his weapons were registered and stored at the armory.  *Id.* ¶¶ 22-25.  Indeed, in August 2012, members of OCS Command received information that Lopez had weapons and suicidal aspirations, but Plaintiff indicates the Command mishandled this incident by, among other things, failing to properly log important details about the incident, including Lopez's possession of weapons.  *Id.* ¶¶ 19-22.  Additionally, the Command is required to conduct Force Preservation Boards ("FPB"), where members of the command discuss individuals with mental illness or suicidal/homicidal intentions or histories, but OCS's FPB, held on September 25, 2012, never mentioned Lopez's name, suicidal ideations, weapons, or move into the barracks.  *Id.* ¶¶ 26-27.

Plaintiff claims Defendant breached its duty to ensure the barracks was a safe environment and to uphold and enforce its regulations by, among other things: (1) failing to consciously and deliberately transfer Lopez's medical records; (2) failing to ensure Lopez registered and stored his weapons in the armory; (3) failing to discuss and remedy Lopez's mental health issues at the Command's FPB; (4) giving Lopez the master key, in violation of a Marine Corps Order; (5) putting a Marine who had multiple Non-Judicial Punishments and was in the process of being administratively discharged on Duty as the Sentry and in-possession of the master key; (6) failing to enforce non-discretionary Department of Defense and Marine Corps orders; (7) failing to provide emergency medical attention immediately after the shooting; and (8) failing to contact local civilian authorities to assist.  *Id.* ¶ 43.

While acknowledging the tragic nature of this case, Defendant moves to dismiss under *Feres v. United States* and its progeny, which prohibit suits against the military for injuries arising out of or in the course of activity "incident to service."  340 U.S. at 146.  Defendant argues the "*Feres* doctrine" divests the Court of subject matter jurisdiction over Plaintiff's case.  Mot. at 1, 3.

United States District Court
Northern District of California

United States District Court
Northern District of California

**LEGAL STANDARD**

Federal district courts are courts of limited jurisdiction; "[t]hey possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted).   Accordingly, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*; *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to move to dismiss a lawsuit for lack of subject matter jurisdiction.  A jurisdictional challenge may be facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Where the attack is facial, the court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction.  *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  Where the attack is factual, however, "the court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*, 373 F.3d at 1039.  In resolving a factual dispute as to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment.  *Id.*; *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (holding that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction").

A motion to dismiss based on *Feres v. United States* is a request for dismissal for lack of subject matter jurisdiction under Rule 12(b)(1).  *Bowen v. Oistead*, 125 F.3d 800, 803 (9th Cir. 1997) (citing *Jackson v. United States*, 110 F.3d 1484, 1486 (9th Cir. 1997)).

**DISCUSSION**

The Federal Tort Claims Act ("FTCA") "effects a broad waiver of the United States' sovereign immunity from suit for tort damages." *Jackson v. Tate*, 648 F.3d 729, 733 (9th Cir. 2011) (citing 28 U.S.C. § 2674); *see also* 28 U.S.C. § 1346(b) ("[D]istrict courts . . . have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . .

4

1   for . . . personal injury or death caused by the negligent or wrongful act or omission of any

2   employee of the Government while acting within the scope of his office or employment, under

3   circumstances where the United States, if a private person, would be liable to the claimant in

4   accordance with the law of the place where the act or omission occurred.").  "In an exception to

5   this waiver," however, "the FTCA withholds the United States' consent to be sued for '[a]ny claim

6   arising out *of the combatant activities* of the military or naval forces, or the Coast Guard, *during*

7   *time of war.*'"  *Id.* (brackets in original; emphasis added) (quoting 28 U.S.C. § 2680(j)).

8          In *Feres v. United States*, the Supreme Court expanded this exception and held that "the

9   Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the

10   injuries arise out of or are in the course of activity incident to service."  340 U.S. at 146.  The

11   Supreme Court has been criticized for its decision in *Feres* as going well beyond what Congress

12   intended in delineating the foregoing exception to the FTCA in § 2680(j).  *See United States v.*

13   *Johnson*, 481 U.S. 681, 700 (1987) (Scalia, J., dissenting, joined by Brennan, Marshall, and

14   Stevens, JJ.) ("*Feres* was wrongly decided and heartily deserves the widespread, almost universal

15   criticism it has received.").  Nonetheless, the Supreme Court has continued to uphold *Feres* and its

16   "bar has been interpreted broadly[,]" so that "[p]ractically any suit that 'implicates the military

17   judgments and decisions' . . . runs the risk of colliding with *Feres*."  *Bowen*, 125 F.3d at 803

18   (quoting *Persons v. United States*, 925 F.2d 292, 295 (9th Cir. 1991)) (internal marks omitted).

19   The Ninth Circuit Court of Appeals has held that "the *Feres* doctrine is applicable 'whenever a

20   legal action would require a civilian court to examine decisions regarding management, discipline,

21   supervision, and control of members of the armed forces of the United States."  *Bowen*, 125 F.3d

22   at 804 (quotations and internal marks omitted)).

23          In assessing whether the *Feres* doctrine applies, courts consider "two common factors": (1)

24   whether the injured person was a member of the armed forces of the United States at the time the

25   injury was sustained; and (2) whether the injury arises out of or occurred in the course of activity

26   incident to military service.  *See Jackson*, 648 F.3d at 733.  As there is no dispute Castromata was

27   on active duty for the USMC at the time of her death, Compl. ¶ 3, the key inquiry and dispute in

28   this matter is whether her death occurred "in the course of activity incident to [her] service."

*Feres*, 340 U.S. at 146.

In *Johnson v. United States*, the Ninth Circuit articulated four factors for determining whether an injury has been sustained in the course of an activity "incident to service," including (1) the location where the activity giving rise to the injury occurred; (2) the duty status of the plaintiff at the time of activity giving rise to the injury; (3) the benefits accruing to the plaintiff because of her status as a service member; and (4) the nature of the plaintiff's activities at the time of the activity giving rise to the injury. 704 F.2d 1431, 1436-41 (9th Cir. 1983); *Jackson v. Tate*, 648 F.3d at 733 (applying factors); *see also Schoenfeld v. Quamme*, 492 F.3d 1016, 1021 (9th Cir. 2007) ("[T]he most relevant line of inquiry is whether or not the service member's activities at the time of the injury are of the sort that could harm the disciplinary system if litigated in a civil action." (quoting *Johnson*, 704 F.2d at 1439).  While courts in the Ninth Circuit have relied on such factors in guiding their analysis, in *United States v. Shearer*, the Supreme Court has stated that "[t]he *Feres* doctrine cannot be reduced to a few bright-line rules," 473 U.S. 52, 57 (1985). The Ninth Circuit has directed courts to thus focus on the "totality of the circumstances" to determine whether the alleged injury occurred "incident to service." *See Costo v. United States*, 248 F.3d 863, 867 (9th Cir. 2001), *cert. denied*, 534 U.S. 1078 (2002).  In doing so, "lower courts have typically resorted to comparing fact patterns in previous cases with that in the case before them in an effort to produce the most appropriate outcome." *Estate of McAllister v. United States*, 942 F.2d 1473, 1477 (9th Cir. 1991), *cert. denied*, 112 S. Ct. 1164 (1992).  Additionally, the Ninth Circuit has recognized that the "key inquiry is 'whether the suit requires the civilian court to second-guess military decisions, . . . and whether the suit might impair essential military discipline[,]'" noting that the "the interest in maintaining military discipline—is 'the most persuasive justification' for the [*Feres*] doctrine, and our *Feres* cases have focused mainly on whether the serviceman's activities implicate that interest." *Schoenfeld*, 492 F.3d at 1019 (quotations omitted).

Defendant cites *McAllister* as controlling precedent for this case.  Mot. at 7.  *McAllister* in turn relied on the Supreme Court's decision in *United States v. Shearer*, 473 U.S. 52 (1985).  In *Shearer*, Army Private Vernon Shearer was off-duty and away from base when he was kidnapped

6

and murdered by another serviceman, Andrew Heard. 473 U.S. at 53. Shearer's mother brought

suit under the FTCA, alleging the Army had been negligent because it knew Heard was dangerous

and yet had "'failed to exert a reasonably sufficient control over' him and 'failed to warn other

persons that he was at large.'" *Id.* at 53-54. The Court held that *Feres* barred the action because it

would entail the "hal[ing] [of] Army officials into court to account for their supervision and

discipline of Private Heard," *id.* at 59, explaining that

> [t]o permit this type of suit would mean that commanding officers
> would have to stand prepared to convince a civilian court of the
> wisdom of a wide range of military and disciplinary decisions; for
> example, whether to overlook a particular incident or episode,
> whether to discharge a serviceman, and whether and how to place
> restraints on a soldier's off-base conduct.

*Id.* at 58. Even though respondent focused on her claims on the Army's negligence,

"characterizing her claim as a challenge to a 'straightforward personnel decision[,]'" the Supreme

Court rejected this argument, asserting that "[b]y whatever name it is called, it is a decision of

command." *Id.* at 59. The Court thus held that *Feres* barred Shearer's mother's FTCA claim.

The Ninth Circuit subsequently adhered to the *Shearer* rationale in upholding the dismissal

of a wrongful death action that alleged that the military was negligent in its supervision of a

known paranoid schizophrenic with dangerous tendencies who killed an off-duty serviceman.

*McAllister*, 942 F.2d at 1477-79. There, the complaint alleged

> The direct and proximate cause of the death of the decedent was the
> negligence of the defendant, the Department of the Army and its
> agents and employees[,] in carelessly, wrongfully and negligently
> failing to properly supervise, control and treat said Private Tarver
> and in failing to otherwise protect the decedent, William F.
> McAllister, from said Private Leon Tarver when defendant, it's [sic]
> employees and agents knew or should have known that Private
> Tarver posed a foreseeable risk of harm to the public. The
> supervision, control and treatment of said Private Leon Tarver did
> not require defendants, employees, and agents to exercise complex,
> subtle, and professional judgment as to composition, training [,]
> equipping and controlling of a military force.

*Id.* at 1478 n.3. As much as the Court may wish to ignore the parallels between *McAllister* and the

United States District Court
Northern District of California

1     allegations in this case, they are much too similar to do so.[2]

2        Plaintiff attempts to distinguish *Feres* and its progeny, acknowledging those cases contain

3     "one unifying principle: courts do not want to second guess military management or military

4     discipline." Opp'n at 12 (citing *Feres*, 340 U.S. at 136; *Shearer*, 473 U.S. at 58; *Persons v.*

5     *United States*, 925 F.2d 292 (9th Cir. 1991)); *see also Schoenfeld*, 492 F.3d at 1019 (recognizing

6     the interest in maintaining military discipline is "the most persuasive justification" for the *Feres*

7     doctrine). But he claims that is not the issue here. Rather, Plaintiff generally argues (A) "many of

8     the defendant's wrongful acts willfully or recklessly disregarded non-discretionary" military and

9     USMC Orders, e.g., "it is uniform policy of the Marine Corps to require all personally-owned fire

10    arms to be stored at the base armory, yet the Command here failed to (1) notify incoming Marines

11    of this policy and (2) enforce the base order"; and (B) there is "nothing distinctly military about

12    the negligence" alleged in this case and the same type of negligence could just as easily been

13    alleged in a non-military, private civilian context. *See* Opp'n 13-14. There is some internal

14    conflict in this logic, i.e., saying that Defendant's negligence stems from failure to follow military

15    rules but at the same point arguing that those acts were not distinctly military—nonetheless, the

16    Court understands Plaintiff's point to be that some of Defendant's negligent acts relate to violating

17    mandatory military orders, and other acts demonstrate more general failure to exercise due care

18    under the circumstances.

19        There are two problems with Plaintiff's first argument. First, Plaintiff has cited no

20    authority for this proposition. The only case Plaintiff relies on is *Berkovitz v. United States*, 486

21    U.S. 531, 548 (1980), which Plaintiff acknowledges held that "the discretionary function

22    exception to the FTCA does not shield a Federal agency that does not comply with mandatory

23    rules." Opp'n at 13. The discretionary function exception to the FTCA is not related to the *Feres*

24    doctrine, and the holding has no bearing on this case. Second, when it comes to assessing whether

25    and how to enforce military orders and rules, permitting a suit on such grounds directly implicates

26    the concern about second-guessing military decisions and *Shearer*'s statement that it would mean

27

---

28    [2] Plaintiff's Opposition does not mention or attempt to distinguish *McAllister*. *See generally*
      Opp'n.

commanding officers "would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions; for example, whether to overlook a particular incident or episode . . . ." 473 U.S. at 58. The Court therefore cannot say that simply because the military has orders or rules on a subject means that the concerns underlying *Feres* and its progeny can be overcome.

As to Plaintiff's second argument, the Supreme Court "has sent the message that . . . an individual can, based solely upon his status as a member of the armed forces, be proscribed from enjoying the same legal remedies as his civilian counterparts."[3] Mark G. Maser, *Torts - Feres Doctrine - United States Courts of Appeals Consistently Hold That Members of the Armed Forces Are Barred from Bringing Suits Against the Government When Service Members Are Injured Incident to Military Sponsored Sports and Recreational Activities*, 12 Seton Hall J. Sport L. 333, 359 (2002); *see also Costo*, 248 F.3d at 867 ("If the fear is that civilian courts will be permitted to second-guess military decisions, then even civilian suits that raise such questions should be barred. But they are not." (citation omitted)). While Plaintiff cites a handful of cases that seem to recognize the civilian/military distinction as a basis for withholding the application of *Feres*, they have done so under markedly different circumstances from those here. *See Schoenfeld*, 492 F.3d at 1026 (noting "the neglected damage to the guardrail in this case could just as easily have existed on a non-military road" but also acknowledging "[t]here was nothing distinctly military about the earlier car crash that created it, nor about the dangerous condition itself."); *Dreier v. United States*,

---

[3] This was not always the case. As the Ninth Circuit recognized, *Brooks v. United States*, 337 U.S. 49 (1949) seemed to hold otherwise. *See McAllister*, 942 F.2d at 1477. Specifically, in *Brooks*, the Supreme Court held that the tort suit brought by two servicemen (brothers) struck by a military-owned vehicle driven by a civilian employee of the Army while they were out on furlough and driving along a public highway could proceed, thereby rejecting the contention that the brothers' father, riding in the same car, could recover for his injuries but there could be no liability to the sons, solely because they were in the Army. *See* 337 U.S. at 52. The Supreme Court rejected the contention primarily because the brothers were on leave at the time, which was not analogous to that of a soldier injured while performing his duties under orders. *Id.* ("[W]e are dealing with an accident which had nothing to do with the Brooks' army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired."). But as the *McAllister* court noted, "[i]f the evolution of the *Feres* doctrine had stopped in 1950, appellants would have the better argument" in regard to the civilian/military distinction. 942 F.2d at 1477. But ultimately, subsequent cases "have expanded greatly the factual circumstances under which the conduct of military personnel will be deemed 'incident to service.'" *Id.*

106 F.3d 844, 853-54 (9th Cir. 1996), *as amended* (Feb. 4, 1997) (noting "Ronald was in the same position as any civilian would have been at the time of the government's negligence" and that "the same type of negligence [] could be alleged against a completely private water treatment plant" but also noting "[t]his case makes no allegations of inadequate military supervision or training").

The Court is thus left with the nature of Plaintiff's allegations, which all ultimately implicate military management and decision-making.  Plaintiff alleges Defendant was negligent in the following respects: (1) failing to consciously and deliberately transfer Lopez's medical records; (2) failing to ensure Lopez registered and stored his weapons in the armory; (3) failing to discuss and remedy Lopez's mental health issues at the Command's FPB; (4) giving Lopez the master key, in violation of a Marine Corps Order; (5) putting a Marine who had multiple Non-Judicial Punishments and was in the process of being administratively discharged on Duty as the Sentry and in-possession of the master key; (6) failing to enforce non-discretionary Department of Defense and Marine Corps orders; (7) failing to provide emergency medical attention immediately after the shooting; and (8) failing to contact local civilian authorities to assist.  Compl. ¶ 43; *see* Mot. at 5-6 (arguing that "each of those steps would go 'directly to the "management" of the military' and 'call into question basic choices about the discipline, supervision, and control of a serviceman.'" (quoting *Shearer*, 473 U.S. at 58).  The Court reluctantly agrees with Defendant that Plaintiff's allegations all implicate the concerns sheltered by *Feres*' progeny.  *See Ritchie v. United States*, 733 F.3d 871, 876 (9th Cir. 2013) (recognizing that courts have noted such concerns as the fact "that adjudication of her claim would require a court to 'examine the government's activity in relation to military personnel on active duty'" and would "require members of the Armed Services to testify in court as to each other's decisions and actions." (quotations omitted)). [4]

_____

[4] This is the first time the undersigned has dealt with the *Feres* doctrine, and it strikes the Court that this doctrine—or at least the way it has been interpreted—is inconsistent with the plain language of the statutory exception of the FTCA.  *See* 28 U.S.C. § 2680(j).  But as the *Costo* court recognized, "until Congress, the Supreme Court, or an en banc panel of [the Ninth Circuit] reorients the [*Feres*] doctrine, [courts] are bound to follow" this doctrine.  248 F.3d at 869; *but see id.* at 869 (Ferguson, J., dissenting) (challenging the constitutionality of *Feres* doctrine on equal protection and separation of powers grounds).

United States District Court
Northern District of California

**CONCLUSION**

In light of the foregoing, the Court must **GRANT** Defendant's Motion to Dismiss Plaintiff's Complaint.  As the fundamental nature of Plaintiff's allegations implicate the *Feres* doctrine, and there is no indication that Plaintiff would be able to allege new or different facts to bring this case out of *Feres*' purview, the Court must **DISMISS** Plaintiff's Complaint **WITH PREJUDICE**.  The Clerk of Court shall close the file.

**IT IS SO ORDERED.**

Dated: June 21, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
Northern District of California

11